No. 24-1679

# In the United States Court of Appeals for the Third Circuit

_____

EVA MIGLIORE,
by her next friend Joseph Migliore,
*Appellant,*

v.

SUNLIGHT FINANCIAL, LLC, & CROSS RIVER BANK,
*Appellees*

_____

On Appeal from the United States District Court
for the District of New Jersey
Case No. 1:23-cv-02623-CPO

_____

## APPELLANT'S OPENING BRIEF

_____

Cary L. Flitter
Andrew M. Milz
Jody Thomas López-Jacobs
**FLITTER MILZ P.C.**
1814 East Route 70, Suite 350
Cherry Hill, NJ 08003
(856) 396-0600
cflitter@consumerslaw.com
amilz@consumerslaw.com
jlopez-jacobs@consumerslaw.com

February 19, 2025

# TABLE OF CONTENTS

Table of Contents ...................................................................i

Table of Authorities............................................................. iii

Jurisdictional Statement.........................................................1

Statement of Issues for Review................................................3

Statement of Related Cases and Proceedings ...........................4

Concise Statement of the Case................................................5

    I.   Statement of facts................................................5

        A.   Sunlight and Cross River's highly integrated sales business model for solar panel systems..........................5

        B.   The offer of "free" solar panels to Migliore. ...................10

        C.   The Migliores discover the forgery and cancel the contract. .........................................................12

        D.   Sunlight and Cross River obtained and used Mrs. Migliore's consumer report without authorization........16

        E.   Pattern and practice of fraudulent and deceptive conduct.........................................................17

    II.  Procedural history .............................................18

Summary of Argument.........................................................21

Argument...........................................................................24

    I.   Standard of review .............................................24

    II.  The district court erred in dismissing Migliore's CFA claims..........................................................26

A.   Migliore has plausibly alleged that Sunlight and Cross River are responsible for the fraudulent and deceptive conduct of the sales agent under principles of agency. ..........................................26

B.   Migliore has plausibly alleged that Sunlight and Cross River violated the CFA by failing to deliver a copy of the contract they contend was signed by Migliore. ..........................................40

III. The district court erred in dismissing Migliore's FCRA claims against Sunlight and Cross River. ...........................45

Conclusion ...........................................................................55

# TABLE OF AUTHORITIES

## Cases

*Acevedo v. Sunnova Energy Corp.*, 738 F. Supp. 3d 1268 (C.D. Cal. 2024)..................................................................34

*Am. Sur. Co. of New York v. Pauly*, 170 U.S. 133 (1898).......................26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................24

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021)..................................37

*Brown v. Vivint Solar, Inc.*, No. 8:18-CV-2838-T-24 JSS, 2020 WL 1332010 (M.D. Fla. Mar. 23, 2020) ........................ 47, 51, 53

*Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860 (3d Cir. 1977).............37

*Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23 (D.N.J. 2020) ............................................25

*Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493, 2023 WL 8890229 (D.N.J. Dec. 26, 2023)...........................................36

*Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022) .................. 24, 29, 32

*Droney v. Vivint Solar*, No. 18-849, 2020 WL 3425301 (D.N.J. June 23, 2020) .........................................................................46

*Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150 (3d Cir. 1986)...............2

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).....................24

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) .....................2, 25

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187 (3d Cir. 2009)...................................................................................45

*Glanton v. DirecTV, LLC*, 172 F. Supp. 3d 890 (D.S.C. 2016) ......... 48, 53

*Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103 (N.J. 2011) ...............40

iii

*Gunderson v. ADM Inv. Servs., Inc.*, 230 F.3d 1363 (8th Cir. 2000) ................................................................................. 38

*Heim v. Comcast Cable Communications, LLC*, 2020 WL 9211285 (N.D.Ill. June 1, 2020) ........................................... 48

*Herner v. HouseMaster of Am., Inc.*, 793 A.2d 55 (N.J. Super. App. Div. 2002) ......................................................... 44

*Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495 (N.J. 2001) ................ 42

*In re Color Tile Inc.*, 475 F.3d 508 (3d Cir. 2007) ............................ 48, 52

*In re Johnny Popper, Inc.*, 997 A.2d 257 (N.J. Super. App. Div. 2010) ....................................................................... 42

*In re Rockefeller Center Properties, Inc. Securities Litig.*, 311 F.3d 198 (3d Cir. 2002) ............................................... 39

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) ........................................................................ 25

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803 (3d Cir. 2003) ..................................................... 37

*Kennedy v. Weichert Co.*, 289 A.3d 813 (N.J. Super. App. Div. 2023) ........................................................................ 35

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546 (N.J. 1997) ................................................................ 43, 45

*Lopez v. New Jersey Sun Tech, LLC*, No. 3:24-CV-01354, 2025 WL 260326 (M.D. Pa. Jan. 21, 2025) ................. 34, 35, 36

*McLaren v. UPS Store Inc*, 32 F.4th 232 (3d Cir. 2022) ........................ 25

*NCP Litig. Tr. v. KPMG LLP*, 901 A.2d 871 (N.J. 2006) ...................... 48

*Real v. Radir Wheels, Inc.*, 969 A.2d 1069 (N.J. 2009) .......................... 43

*Sears Mortgage Corp. v. Rose*, 634 A.2d 74 (N.J. 1993) ................... 27, 35

*Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3d Cir. 1992) ................ 2

*Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043 (7th Cir. 2005) ...................................... 46

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ............................. 46

*Warner v. Vision Solar LLC*, No. 22-CV-5307, 2023 WL 4118348 (D.N.J. June 22, 2023) ........................................ 25

## Statutes

15 U.S.C. § 1681 ...................................................................... 21

15 U.S.C. § 1681b(f) .......................................... 46, 47, 53, 55

15 U.S.C. § 1681n ................................................................... 52

15 U.S.C. § 1681*o* ................................................................. 52

15 U.S.C. § 1681p ..................................................................... 1

15 U.S.C. § 1681q ................................................................... 46

28 U.S.C. § 1291 ................................................................... 1, 2

28 U.S.C. § 1331 ....................................................................... 1

N.J.S.A. 56:8-1 ................................................................ 21, 40

N.J.S.A. 56:8-2 ................................................................ 39, 41

N.J.S.A. 56:8-2.22 ............................................... 41, 43, 44, 45

## Other Authorities

Assembly Commerce and Industry Committee Statement, No. 234, 1982 ..................................................................... 43

RESTATEMENT (SECOND) OF AGENCY § 14N (1958) .................. 27

RESTATEMENT (SECOND) OF AGENCY § 14N, Comment (b) (1958) ..................................................................................... 27

## Rules

Fed. R. Civ. P. 8(a)(2) ...................................................................24

Fed. R. Civ. P. 9(b)...........................................................25, 38, 39

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681p, which raises a federal question and expressly grants jurisdiction. This Court has appellate jurisdiction pursuant 28 U.S.C. § 1291 because the district court's March 27, 2024 Order granting the Motion to Dismiss Second Amended Complaint ("SAC") of Sunlight Financial LLC ("Sunlight") and Cross River Bank ("Cross River") is a final order that disposes of all claims. R.22.[1] Migliore's appeal concerns only her claims against Sunlight and Cross River.

Certain claims against Defendants Jon Seibert and Vision Solar NJ LLC were allowed to proceed. R.22. However, Migliore voluntarily dismissed those claims against Jon Seibert and Vision Solar NJ LLC by Notice of Dismissal filed on April 11, 2024. R.164. Prior to the March 27, 2024 Order, the district court terminated the claims against Defendant Vision Solar LLC due to its filing of a Suggestion of Bankruptcy. R.55.

---

[1]  References to the appendix are designated by "R" followed by the page number(s) of the appendix.

On April 12, 2024, Migliore filed her Notice of Appeal of the district court's March 27, 2024 Order. R.24. On April 29, 2024, Migliore filed with the district court a "Notice of Intent to Stand on [SAC]." R.165. Thereafter, in response to a Clerk's Order (ECF 17), Migliore clarified that she formally abandons her claims against the bankrupt Vision Solar, LLC, which was already administratively terminated from the case. ECF 18.

To the extent there remains any ambiguity as to the status of Migliore's claims against Vision Solar, LLC, Vision Solar NJ, LLC, and Jon Seibert, Migliore formally abandons those claims with prejudice. As such, for all practical purposes, the district court's March 27, 2024 Order has become final. *Frederico v. Home Depot*, 507 F.3d 188, 191 (3d Cir. 2007) (quoting *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 278 (3d Cir. 1992)) (adopting a "'practical rather than a technical construction' of § 1291's finality requirement"); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1156 (3d Cir. 1986) (recognizing that a non-final order may be rendered final due to "subsequent events").

The only remaining defendants are the appellees, Sunlight and Cross River.

## STATEMENT OF ISSUES FOR REVIEW

1. A sales agent falsely offered "free" solar panels then forged the electronic signature of a senior citizen on a 25-year $99,000 solar finance contract, hidden from the consumer by use of a phony email address, ensuring she would not see the contract or learn of her three-day-right-to-cancel until after panels were installed. By pleading the solar finance companies controlled and authorized the sales agent's conduct, benefitted from it, and required the sales agent to use specific technology that enabled the fraud (namely the electronic tools to forge contracts and hide them by use of a false email address) did the consumer adequately plead agency such that the solar finance companies are responsible for the sales agent's deceptive conduct under the New Jersey Consumer Fraud Act?

**Suggested Answer**: Yes.

2. Apart from pleading liability under New Jersey Consumer Fraud Act based on principles of agency, did the consumer state a claim for relief under the CFA against the solar finance companies where those companies failed to provide a copy of a forged loan contract to the consumer as the statute requires?

**Suggested Answer**: Yes.

3. The FCRA mandates that only those with a permissible purpose may obtain and use a consumer report. The consumer pleaded that the solar finance companies used and obtained her credit report without a permissible purpose and that those companies *knew* their sales agents were improperly obtaining consumers reports on their behalf and engaging in similar deceptive conduct. Did the consumer state a claim against the solar finance companies under the FCRA for negligently or willfully obtaining and using the consumer's credit report without a permissible purpose?

**Suggested Answer**: Yes.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. Aside from the Vision Solar, LLC bankruptcy proceeding, Migliore is not aware of any other case or proceeding that is related, completed, pending, or about to be presented before this Court or any other court or agency, state or federal, aside from the court below. As with Jon Seibert and Vision Solar, NJ, LLC, Migliore formally abandons any claims she may have against Vision Solar, LLC.

<u>CONCISE STATEMENT OF THE CASE</u>

I.     Statement of facts

    A.     **Sunlight and Cross River's highly integrated sales business model for solar panel systems.**

Appellees Sunlight and Cross River are collectively in the business of selling and financing solar panel systems that are installed on consumers' homes. R.82–83 (SAC ¶ 3). Appellees' door-to-door sales agents solicit consumers using electronic tablets such as iPads and iPhones to enter into loans to purchase solar panels. Id. The standard loan term is 25 years. Id.

Sunlight operates a technology-enabled financial services platform using a nationwide network of contractors at the point-of-sale to offer homeowners secured and unsecured loans, originated by third-party lenders, for the purchase and installation of residential solar energy systems and other home improvements. R.84 (SAC ¶ 20). Sunlight, in turn, arranges for the origination of loans by third-party lenders, including Cross River. R.85 (SAC ¶¶ 21, 24).

Sunlight has entered into program agreements with Cross River that govern the terms and conditions with respect to originating and servicing loans. R.85 (SAC ¶ 24). Sunlight pays Cross River a fee based

on the principal balance of loans originated by Cross River. Id. Cross River funds these loans by remitting funds to Sunlight, and Sunlight is thereafter responsible for making the appropriate payments to the relevant contractor. Id. Integral to this arrangement, Cross River operates a fund from which Sunlight can borrow to make Sunlight's point-of-service and contractor loans. R.86 (SAC ¶ 27).

Sunlight regularly partners with and uses door-to-door sales companies such as Vision Solar,[2] and their agents, to enter into loans for solar products. R.85 (SAC ¶ 25). Vision Solar is in the business of marketing, selling, leasing, designing, constructing, installing, and servicing photovoltaic and/or solar energy systems on residential properties. R.84 (SAC ¶ 18). Vision Solar's CEO is Jon Seibert ("Seibert"), a defendant below. R.86 (SAC ¶ 30).

At all times relevant, the sales agent was working under the direction and control of Vision Solar, Sunlight, and Cross River. R.86 (SAC ¶ 33). Vision Solar, Sunlight, and Cross River required the sales agent to use specific software, applications, and technology when

---

[2]     "Vision Solar" means Defendants Vision Solar LLC and Vision Solar NJ LLC. R.84 (SAC ¶ 17).

engaging in transactions with consumers on their behalf. R.86 (SAC ¶ 34). The sales agent who interacted with Mrs. Migliore was affiliated with all of these companies, acting as their agent to engage in transactions on their behalf under specified terms and conditions. R.86 (SAC ¶ 35).

Vision Solar, Sunlight, and Cross River retained the right to control the conduct of the sales agent, including the products that he could offer, the terms and conditions of the products offered, and the method of presentation of the products offered, including the contract documents in question. R.87 (SAC ¶ 37).

The sales agent could not have consummated any transaction without the sales agent's existing relationship with Vision Solar, Sunlight, and Cross River, under which the sales agent was authorized to offer products on their behalf under specified terms and conditions. R.87 (SAC ¶ 38). The sales agent in this matter solicited and processed applications for credit and financing on behalf of Sunlight and Cross River. R.87 (SAC ¶ 40).

Vision Solar has a program agreement with Sunlight. R.87 (SAC ¶ 36). In the court below, Sunlight attached a Financing Program

Agreement ("FPA") as Exhibit A to its Motion to Dismiss. R.110 (FPA).[3] Under the FPA, Vision Solar offers products on behalf of Sunlight and under terms that afforded Sunlight the right to control the conduct of the sales agent. R.87 (SAC ¶ 36). The FPA also provides for, *inter alia*, integration of technological processes, mandatory training as directed by Sunlight, and control over the marketing materials by Sunlight:

- Sunlight and Vision Solar agreed to "use commercially reasonable efforts to integrate their respective processes and technology platforms to facilitate Loan Applications and origination," and Sunlight retained the right to review all "technical integrations" impacting the Platform.[4] R.123 (FPA ¶ 9.3(a)).

- Sunlight retained the right to approve Vision Solar's form of contracts. R.120 (FPA ¶ 9.2(a)).

- Sunlight retained the right to control the content of marketing materials. R.117 (FPA ¶ 8.1(a)).

---

[3] Though the court below sealed the entirety of the FPA, the parties have agreed to the public filing of a lightly redacted version of the FPA. Sunlight will file a motion for leave to file the unredacted FPA under seal.
[4] "Platform" is defined as "a credit platform or other application programming interface." FPA, Schedule I. Sunlight takes loan and credit applications through its online Platform. FPA ¶¶ 3.2 & 3.3.

- Vision Solar agreed to "comply with any and all policies and procedures mandated by any Lender or by Sunlight for compliance with" certain state and federal consumer protection laws. R.117 (FPA ¶ 8.1(c)).

- Vision Solar agreed to train employees and third-party sales organizations in accordance with "all compliance training materials provided by Sunlight to [Vision Solar]." R.117–18 (FPA ¶ 8.1(d)).

- Sunlight agreed to "provide mandatory training sessions" to Vision Solar's sales representatives "including training addressing product sales and marketing and potential legal compliance issues." R.119 (FPA ¶ 9.1(b)).

- Sunlight retained the right, "in its sole discretion," to force Vision Solar to "terminate" a sales organization's ability to market systems financed by loans through Sunlight. R.118 (FPA ¶ 8.1(e)).

As alleged, discovery will show that Sunlight and Cross River had the right to control the marketing and sales tactics of the sales agent and the program generally. R.87 (SAC ¶ 40). As alleged, discovery will also show that the Sunlight and Cross River retained the right to review the contracts, forms, and software used by the sales agent, R.87 (SAC ¶ 41),

as well as the right to train and discipline the sales agent for failing to comply with program conditions. R.87 (SAC ¶ 42).

## B. The offer of "free" solar panels to Migliore.

Eva Migliore ("Migliore") is a senior citizen who owns and lives at her home located at 42 Hummingbird Lane, Whiting, NJ. R.83, 88 (SAC ¶¶ 5, 43). In the community in which Migliore lives, there are large, conspicuous signs that prohibit solicitations. R.88 (SAC ¶ 44).

In or about October 2022, a sales agent solicited Migliore about "free" solar panels. R.88 (SAC ¶ 45). The sales agent, acting on behalf of all Appellees, visited Migliore at her home, offering her energy conservation and solar panels that, in their words, would be "free." Id.

Migliore told the sales agent that she would need to talk to her children about getting the panels, but the sales agent rushed her, telling her, "Don't worry about it," and that "we want to hurry up and get going with it, or else you're not going to get it like it is." R.88 (SAC ¶ 46). The sales agent advised that they would just put the panels up and she could talk to her children later. Id.

Migliore did not sign anything during the interaction, but she orally agreed with the sales agent to move forward with the installation of free

solar panels. R.88 (SAC ¶ 47).  At no point during the solicitation did the sales agent mention the need for or existence of a financed transaction or loan. R.88 (SAC ¶ 48). No contract documents—paper or electronic—were sent or shown to Migliore at or near the time of the solicitation. R.88 (SAC ¶ 49).

Migliore's roof was not suitable for solar panels. R.88 (SAC ¶ 50). Approximately three or four years ago, the roof of Migliore's home failed inspection. R.88 (SAC ¶ 51). The house is also surrounded by trees that would shade the solar panels, as depicted below:



R.89 (SAC ¶ 52). Nonetheless, panels were installed in January 2023. R.91 (SAC ¶ 53).

###### C. The Migliores discover the forgery and cancel the contract.

In February 2023, Mrs. Migliore was contacted several times by Vision Solar to arrange for inspection of the solar panels to make them operational. R.91 (SAC ¶ 54). Mrs. Migliore's son, Joseph, learned about

these phone calls, and promptly thereafter called Vision Solar on Mrs. Migliore's behalf to get more information. R.91 (SAC ¶ 55). Joseph was told that Mrs. Migliore had entered into a contract for the solar panels, but that there was a "clerical error" with his mother's email address that prevented her from being emailed a copy. R.91 (SAC ¶ 56). Indeed, the email used is incorrect, as it transposed letters in Mrs. Migliore's name— "Migilore" instead of "Migliore." R.91 (SAC ¶ 57). This was intentional— done for the purpose of hiding the contract from Migliore. R.92 (SAC ¶ 63).

After Joseph provided the correct email address for his mother, documents were emailed to her for the first time, including a "Summary of Key Loan Terms" from Sunlight, which stated, "We are excited to partner with Vision Solar LLC to help you go solar!" R.91 (SAC ¶ 58). Also included in the package of documents was a "Solar Energy System Long-Term Loan Agreement and Promissory Note, Nonnegotiable Consumer Note" dated October 28, 2022 ("25-Year Loan"). R.91 (SAC ¶ 59). The 25-Year Loan purports to obligate Mrs. Migliore to make monthly payments to Cross River for 25 years, with the Total of Payments summing to $99,749.82. Id.

The 25-Year Loan also purports to give Cross River a security interest in the solar panel system installed on Mrs. Migliore's home. R.91 (SAC ¶ 60). Sunlight, which is listed as the "Envelope Originator" on the 25-Year Loan, enabled the loan transaction to proceed without Mrs. Migliore's knowledge or consent. R.91 (SAC ¶ 61).

The 25-Year Loan bears the purported electronic signatures and initials of Mrs. Migliore, but she denies signing any documents at or near the time of the solicitation in October 2022. R.92 (SAC ¶ 62). The electronic signatures and initials are forgeries. Id.

The SAC avers that Cross River, Sunlight, and Vision Solar intentionally hid the 25-Year Loan from Mrs. Migliore, as demonstrated by the DocuSign Certification, which shows that the Loan was sent to an email address that does not belong to her and was signed through that email. R.92 (SAC ¶ 63).

Months later, on or about March 1, 2023, Mrs. Migliore's son Joseph and her daughter-in-law were sent a copy of a document entitled "Residential Sales Agreement" dated October 28, 2022 ("RSA"). R.92 (SAC ¶ 65). The RSA purports to obligate Mrs. Migliore to pay $65,826 to Vision Solar. Id. The RSA bears the purported electronic signature of

Mrs. Migliore, but she denies signing any documents at or near the time of the solicitation in October 2022. R.92 (SAC ¶ 66). The purported electronic signature is a forgery. Id. Cross River, Sunlight, and Vision Solar intentionally hid the RSA from Mrs. Migliore, as demonstrated by the phony email address on the RSA. R.93 (SAC ¶ 70).

Cross River, Sunlight, and Vision Solar intentionally hid other documents from Mrs. Migliore as well, including other documents purportedly bearing the electronic signature of Mrs. Migliore, but which she did not sign. R.93 (SAC ¶ 71). This includes a document that Vision Solar calls a "Power of Attorney." Id. On information and belief, Appellees' sales agent created an email address very similar to Mrs. Migliore's email, sent all contract documents to that email, and forged Mrs. Migliore's electronic signature on those contract documents on the sales agent's mobile phone. R.93 (SAC ¶ 72).

The SAC alleges the IP address associated with the forged signatures shows that they were signed over the T-Mobile network in Philadelphia, PA, about 50 miles away from Mrs. Migliore's home in Whiting, NJ. R.93 (SAC ¶ 73). Mrs. Migliore does not use T-Mobile. Id.

In February 2023, Cross River, Sunlight, and Vision Solar were notified that Mrs. Migliore desired to cancel the transactions. R.93 (SAC ¶ 74). Despite being notified of Mrs. Migliore's desire to cancel, they did not honor the request. R.93 (SAC ¶ 75). Cross River, Sunlight, and Vision Solar continue to deem Mrs. Migliore bound by the documents their sales agent forged on their behalf. R.93 (SAC ¶ 76).

### D. Sunlight and Cross River obtained and used Mrs. Migliore's consumer report without authorization.

On October 28, 2022, Sunlight and Cross River, without notice or permission, obtained and/or used Mrs. Migliore's consumer reports from Experian and Trans Union, without any permissible purpose or authorization. R.96 (SAC ¶ 90). Sunlight and Cross River required the sales agent to obtain Mrs. Migliore's consumer report for use by Sunlight and Cross River. R.96 (SAC ¶ 91).

At no point during Mrs. Migliore's interaction with the Sunlight and Cross River's sales agent did he mention that her consumer report would be accessed. R.97 (SAC ¶ 92). The sales agent forged Mrs. Migliore's signature on a Power of Attorney that purports to give Vision Solar authorization to "execute . . . credit applications" on Mrs. Migliore's behalf. R.97 (SAC ¶ 93). Sunlight and Cross River's fraudulent

transaction could not have proceeded but for its sales agent obtaining Mrs. Migliore's consumer reports for use by Sunlight and Cross River. R.97 (SAC ¶ 94).

**E.    Pattern and practice of fraudulent and deceptive conduct.**

Sunlight, Cross River, and Vision Solar, as a pattern and practice, regularly engage in, enable, and condone forgeries and other fraudulent and deceptive conduct. R.97 (SAC ¶ 95). Vision Solar is a repeat offender, and both Sunlight and Cross River knew or should have known this. R.97 (SAC ¶ 96). But Sunlight and Cross River nonetheless continued their business relationships with Vision Solar. Id.

Indeed, the SAC avers that hundreds of other complaints have been filed against Vision Solar and its financing partners. Consumers across New Jersey and across the country have complained that Sunlight, Cross River, and Vision Solar's sales agents have engaged in forgeries or other fraudulent or deceptive conduct. R.97 (SAC ¶ 97). By way of example, the Connecticut Attorney General filed suit against Vision Solar alleging that it deliberately targeted vulnerable populations—including low-income, disabled, and elderly individuals—and induced them into the purchase or lease of solar panel systems by systematically

misrepresenting the benefits of such systems and the financial terms of the loans and leasing transactions. R.97–98 (SAC ¶¶ 99–100).

These complaints have not stopped Vision Solar from continuing with the same systemic course of conduct of deceiving consumers. R.88 (SAC ¶ 101). Nor have they stopped Sunlight and Cross River from continuing to associate and/or partner with Vision Solar, as Sunlight and Cross River continue to profit from Vision Solar's deceptive sales practices. Id.

Despite ample notice of serious problems with their corporate processes and operations, Sunlight and Cross River continued to allow and enable their sales agents to engage in forgeries and other fraudulent and deceptive conduct. R.99 (SAC ¶ 102).

## II.  Procedural history

On May 15, 2023, Migliore filed suit in the District of New Jersey. Migliore filed a Second Amended Complaint on August 15, 2023. R.82. Defendants Vision Solar, LLC, Vision Solar NJ, LLC, and Seibert filed a Motion to Dismiss the Second Amended Complaint (hereinafter the "Vision Solar Motion to Dismiss"). R.30 (docket). Separately, Sunlight and the Bank filed a Motion to Dismiss the Second Amended Complaint

(hereinafter the "Sunlight/Bank Motion to Dismiss"). Id. Migliore opposed both motions. R.31 (docket).

During the pendency of the above motions, on November 1, 2023, Sunlight filed a "Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceeding." R.32 (docket). Six days later, the District Court *sua sponte* entered an order administratively terminating Sunlight from the action. Id.

On December 29, 2023, Vision Solar, LLC filed a Suggestion of Bankruptcy, notifying the district court of its commencement of a Chapter 7 bankruptcy proceeding. R.151. Five days later, the district court *sua sponte* entered an order administratively terminating Vision Solar, LLC from the action. R.162.

On March 1, 2024, Migliore and Sunlight submitted a "Stipulation to Reinstate Sunlight Financial LLC," notifying the Court that the Chapter 11 proceedings filed by Sunlight resulted in a bankruptcy plan in which Sunlight continues to exist, and that Migliore's claims against Sunlight were unaffected. R.32. The district court approved the Stipulation on March 18, 2024. Id.

On March 28, 2024, the district court entered an Order granting the Sunlight/Bank Motion to Dismiss. R.22. The district court also granted in part and denied in part the Vision Solar Motion to Dismiss, allowing certain claims against Seibert and Vision Solar NJ, LLC to proceed. Id. However, Migliore voluntarily dismissed Seibert and Vision Solar NJ, LLC. R.164.

Migliore timely appealed on April 12, 2024. R.24. On April 19, 2024, the Clerk entered an Order requesting briefing on whether the March 28, 2024 Order was a final order. ECF 3. On April 29, 2024, Migliore filed in the district court a "Notice of Intent to Stand on Second Amended Complaint." R.165. Thereafter, Migliore submitted her response to the Clerk's April 19th Order. ECF 10.

On December 12, 2024, the Clerk entered an Order requesting briefing on the claims filed against the bankrupt Vision Solar, LLC. ECF 17. On December 20, 2024, Migliore filed a response clarifying that she "formally abandons her claims against Vision Solar, LLC." ECF 18. The Clerk thereafter entered an Order stating that the appeal would not be submitted to the motions panel, but that a panel of this Court would

make a final determination on jurisdiction. ECF 21. A briefing schedule was issued the same day.

## SUMMARY OF ARGUMENT

The district court erred in dismissing Migliore's suit under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 *et seq.* and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* for failure to state a claim upon which relief can be granted.[5]

### *CFA*

The district court improperly held that the allegations in the SAC were insufficient to establish an agency relationship between Sunlight and Cross River and the sales agent. In so ruling, the district court failed to consider the litany of allegations demonstrating Sunlight and Cross River exercised significant control over the sales process, including dictating the technology and marketing materials used by the sales agents, as well as training the sales agents themselves. Rather than evaluating the practical realities of their business model, the district court gave controlling weight to a contractual disclaimer of agency, which

---

[5]     Migliore does not appeal the district court's rulings on the common law claims, the statutory identity theft claim, and the Truth in Lending Act claim.

was error. Courts have recognized that companies cannot evade liability simply by labeling sales agents as independent contractors, particularly when such companies maintain the right to control the sales process.

Additionally, Sunlight and Cross River engaged in deceptive and unconscionable commercial practices by failing to provide Migliore with copies of the contracts bearing her forged signature, as required by the CFA. The district court wrongly held that because the contracts were forged, there was no requirement to deliver them. This effectively creates a loophole that protects unscrupulous businesses that foist obligations onto consumers without their consent by placing phony signatures on contracts. The CFA does not countenance such an absurd and patently unfair result.

## *FCRA*

The district court also erred in dismissing Migliore's FCRA claim. Acquisition and use of confidential consumer credit reports is highly regulated by the FCRA, with hefty civil and even criminal penalties. The sales agent, on behalf of Sunlight and Cross River, obtained Migliore's consumer report without permission or permissible purpose. The sales agent used Sunlight's electronic platform to obtain Migliore's consumer

report, facilitating the fraudulent transaction. Yet the district court, discounting the allegations of agency in the SAC, analogized the sales agent to an "identity thief" and "imposter" outside the Appellees' control. This mischaracterization ignores the detailed factual averments of the SAC. Well-established agency law imputes liability to a principal when an agent acts within the scope of their duties; as such, Sunlight and Cross River are responsible for their sales agent's improper acquisition of Migliore's consumer report. In the "identity thief cases" relied upon by the district court, the thief was an outsider who tricked an innocent company into obtaining the victim's consumer report—not the agent of the company who received and used the report.

The court below overlooked that Sunlight and Cross River were on notice that their business partner, Vision Solar, had a history of consumer complaints of similar fraudulent conduct. Despite this, Sunlight and Cross River chose to disregard these complaints. This constitutes the very type of willful and negligent state of mind sufficient to impose lender liability under the FCRA. Indeed, courts have held that lenders cannot escape FCRA liability when they knew or should have

known that their non-employee agents were engaging in improper credit pulls.

## ARGUMENT

### I. Standard of review

This Court "review[s] the grant of a motion to dismiss de novo." *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022). "To survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "That requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

All factual allegations must be accepted as true and considered "in the light most favorable to" the nonmovant. *Id.* "This guidance remains 'even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely.'" *Id.* at 342 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). "The proper place to resolve factual disputes is not on a motion to dismiss[.]" *Id.*

"In alleging fraud or mistake, parties must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 35 (D.N.J. 2020) (*quoting In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006)). At bottom, the complaint must contain "sufficient details to put the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Warner v. Vision Solar LLC*, No. 22-CV-5307, 2023 WL 4118348, at *5 (D.N.J. June 22, 2023) (*quoting Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Finally, questions of statutory interpretation are subject to *de novo* review. *McLaren v. UPS Store Inc*, 32 F.4th 232, 236 (3d Cir. 2022).

## II.    The district court erred in dismissing Migliore's CFA claims.

### A.    Migliore has plausibly alleged that Sunlight and Cross River are responsible for the fraudulent and deceptive conduct of the sales agent under principles of agency.

The district court held that Migliore failed to plead that Sunlight or Cross River engaged in unlawful conduct under the CFA, stating, "[Migliore] does not describe the 'deceptive conduct,' or the content of any 'misrepresentations' allegedly made by Sunlight[.]" R.11. In so holding, however, the district court refused to consider multiple allegations of agency in the SAC demonstrating that the sales agent's fraudulent and deceptive conduct are properly imputed to Sunlight and Cross River under settled principles of agency.

The common law has long recognized that a principal is liable for the fraudulent and deceptive conduct of its agents. *See, e.g.*, *Am. Sur. Co. of New York v. Pauly*, 170 U.S. 133, 152 (1898) (a principal "cannot enjoy the fruits of the bargain without adopting all the instrumentalities employed by the agent in bringing it to a consummation"). A company's denomination of an agent as a "non-employee" is not dispositive, as a principal may be held liable for the tortious conduct of non-employee agents—including independent contractors—under certain

circumstances. *See Am. Tel. & Tel. Co.*, 42 F.3d at 1437 ("while generally principals are not liable for the torts of their independent contractors, the common law is littered with exceptions").

This Court has explained that "[a]n agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Id.* at 1434 (*quoting Sears Mortgage Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)). As relevant here, an individual is an agent independent contractor with respect to a transaction if he "act[s] for the benefit of another and [is] subject to [the other's] control." RESTATEMENT (SECOND) OF AGENCY § 14N (1958). By contrast, a non-agent independent contractor is someone hired to accomplish a discrete task without any oversight whatsoever, such as "builders and others who have contracted to accomplish physical results not under the supervision of the one who has employed them to produce the results." *Am. Tel. & Tel. Co.*, 42 F.3d at 1439 (quoting RESTATEMENT (SECOND) OF AGENCY § 14N, Comment (b) (1958)).

In analyzing the existence of an agency relationship, this Court has directed district courts to "focus on the level of control exercisable by [the company] over the manner in which sales representatives market its

product[.]" *Id.* In other words, "the district court should assess whether the representatives are analogized better to a firm that contracts to perform a particular, discrete task, such as to build a swimming pool, or to a party who is empowered to speak for another and bind the other in contracts." *Id.*

Where such an agency relationship exists, "a principal *will be* held liable for the independent contractor-agent's misrepresentations 'upon matters which the principal might reasonably expect would be the subject of representations, provided the other party has no notice that the representations are unauthorized.'" *Id.* (emphasis in original). "The basis for the common law exception is the injustice in allowing a principal to place agents in the marketplace, to allow the agents to complete contracts on the principal's behalf, to profit from the agents' misrepresentations, and then to disclaim liability for the agents' actions while benefitting from the fraud." *Id.* at 1438.

Here, Migliore alleges that the sales agent was working at the direction and control of Sunlight and Cross River. R.86 (SAC ¶ 33). Specifically, Sunlight and Cross River required the sales agent to use specific software, applications, and technology when engaging in

transactions with consumers on their behalf. R.86 (SAC ¶ 34). The sales agent who interacted with Mrs. Migliore was affiliated with Sunlight and Cross River, acting as their agent to engage in transactions on their behalf under specified terms and conditions. R.86 (SAC ¶ 35). These are specific allegations of agency that must be taken as true at this stage of proceedings. *Doe*, 30 F.4th at 341.

Sunlight and Cross River retained the right to control the conduct of the sales agent, including the products that he could offer, the terms and conditions of the products offered, and the method of presentation of the products offered, including the contract documents in question. R.87 (SAC ¶ 37). The sales agent could not have consummated any transaction without the sales agent's existing relationship with Sunlight and Cross River, under which the sales agent was authorized to offer products on their behalf under specified terms and conditions. R.87 (SAC ¶ 38). The sales agent in this matter solicited and processed applications for credit and financing on behalf of Sunlight and Cross River. R.87 (SAC ¶ 40).

Sunlight and Cross River authorized the sales agent to make transactions on their behalf, and they benefited from the sales agent's conduct. R.85–87 (SAC ¶¶ 24, 31, 38). The sales agent's

misrepresentations—that the solar panels were "free"—related to the subject matter of the solar panel transaction and were therefore foreseeable. Accordingly, it was entirely foreseeable that the sales agent—given powerful electronic tools enabling him to pull credit and e-sign documents without Migliore's knowledge or consent—would misrepresent Sunlight and Cross River's $99,000 loan product as "free," R.83, 88 (SAC ¶¶ 6, 45) and misuse their electronic tools to forge contracts and hide them from Migliore by use of a false email address. R.83, 91–93, 105 (SAC ¶¶ 5, 61–67, 72–73, 137(a)).

Indeed, the SAC avers that Sunlight and Cross River *knew* that Vision Solar salespersons had been regularly engaging in a pattern and practice of forgeries, fraud, and other deceptive conduct. R.97–99 (SAC ¶¶ 95–102). Sunlight and Cross River enabled the forgeries and fraud through their chosen sales methods, software, and corporate processes. R.87, 91, 97, 99 (SAC ¶¶ 37, 61, 95, 102). The sales agent's fraud was made all the more foreseeable given the litany of consumer complaints of similar fraudulent and deceptive practices by sales agents as alleged in detail in the SAC. R.97–99 (SAC ¶¶ 95–102).

The district court disregarded nearly all of these factual allegations of agency as pled, stating that "[t]he only specific fact Plaintiff alleges in support of such a relationship is that an agreement between the Lender Defendants and Vision Solar (the 'Financing Program Agreement') gave the Lender Defendants authority to direct the actions of the sales representative." R.14. After briefly describing its view of the Financing Program Agreement ("FPA"), the district court concluded, "Nothing in the [FPA] suggests that Sunlight Financial controlled or directed sales representatives' solicitation of loan applications **beyond providing training in compliance and the use of its technology**." R.15 (citing FPA ¶ 9.1(a)) (emphasis added). This was error, for several reasons.

First, although the district court acknowledged in the bolded language above that the FPA did in fact afford Sunlight some control over the sales agents' marketing by means of training, the district court apparently gave no weight to this. But it is certainly relevant that, under the FPA, Vision Solar agreed to train employees and third-party sales organizations in accordance with "all compliance training materials provided by Sunlight to [Vision Solar]." R.117–18 (FPA ¶ 8.1(d)). Such a requirement demonstrates that Sunlight (and its captive lender Cross

River) had substantial control over the manner in which the sales agents represented their solar loan products. By minimizing the importance of such training, the district court weighed facts and drew inferences in favor of the movants, Sunlight and Cross River, which was improper. *See Doe*, 30 F.4th at 342.

Second, other provisions of the FPA also speak to a surprising level of control that Sunlight retained over the sales agents employed by Vision Solar that evidence an agency relationship but which the court below disregarded:

- Sunlight and Vision Solar agreed to "use commercially reasonable efforts to integrate their respective processes and technology platforms to facilitate Loan Applications and origination," and Sunlight retained the right to review all "technical integrations" impacting the Platform.[6] R.123 (FPA ¶ 9.3(a)).

- Sunlight retained the right to approve Vision Solar's form of contracts. R.120 (FPA ¶ 9.2(a)).

---

[6] "Platform" is defined as "a credit platform or other application programming interface." FPA, Schedule I. Sunlight takes loan and credit applications through its online Platform. FPA ¶¶ 3.2 & 3.3.

- Sunlight retained the right to control the content of marketing materials. R.117 (FPA ¶ 8.1(a)).

- Vision Solar agreed to "comply with any and all policies and procedures mandated by any Lender or by Sunlight for compliance with" certain state and federal consumer protection laws. R.117 (FPA ¶ 8.1(c)).

- Sunlight agreed to "provide mandatory training sessions" to Vision Solar's sales representatives "including training addressing product sales and marketing and potential legal compliance issues." R.119 (FPA ¶ 9.1(b)).

- Sunlight retained the right, "in its sole discretion," to force Vision Solar to "terminate" a sales organization's ability to market systems financed by loans through Sunlight. R.118 (FPA ¶ 8.1(e)).

All of these important factors, individually and collectively, allege agency to a much more than "plausible" level. Yet the district court did not address any of these indicia of control in its agency analysis. This was error that requires reversal.

Indeed, in a case with very similar facts involving a door-to-door sales agent soliciting products for Sunlight with all manner of false

claims, the court recognized that a virtually identical FPA between Sunlight and the solar sales company supported the existence of an agency relationship between Sunlight and the sales agent who defrauded the consumer. *Lopez v. New Jersey Sun Tech, LLC*, No. 3:24-CV-01354, 2025 WL 260326, at *9 (M.D. Pa. Jan. 21, 2025). The court there denied Sunlight's motion to dismiss, finding that the defrauded consumer "has pleaded sufficiently plausible factual content giving rise to the inference that Sunlight controlled NJ Sun Tech and its salespersons, thus giving rise to a principal-agent relationship." *Id.*; *see also Acevedo v. Sunnova Energy Corp.*, 738 F. Supp. 3d 1268 (C.D. Cal. 2024) (denying motion to dismiss of solar finance company because allegations sufficient to demonstrate solar salesperson was the lender's agent).

Third, instead of addressing Migliore's multiple allegations of agency, the district court myopically focused on the FPA's generic disclaimer of agency. R.15. Specifically, citing to ¶ 16.8 of the FPA, the district court stated that the FPA "expressly provides that Sunlight [] executes loan agreements on its own behalf." R.15. This mischaracterizes ¶ 16.8 of the FPA, which does not "expressly" state this. R.134 (FPA ¶ 16.8). In fact, the FPA contains an exception (emphasized in bold) that

the district court failed to consider: "Each Party is independent of the other Party, and neither Party shall have any authority and shall not represent that it has the authority to assume or create any obligation, express or implied, on behalf of the other Party, **except as may otherwise specifically be provided in this Agreement**." Id. (emphasis added).

In any event, a disclaimer of agency in a contract is not dispositive under New Jersey law. If the law were otherwise, contracting parties could always avoid an agency relationship through self-serving labels. "The categorization of a working relationship depends not on the nominal label adopted by the parties, but rather on its salient features and the specific context in which the rights and duties that inhere in the relationship are ultimately determined." *Kennedy v. Weichert Co.*, 289 A.3d 813, 824 (N.J. Super. App. Div. 2023). There "need not be an agreement between parties specifying an agency relationship; rather, 'the law will look at their conduct and not to their intent or their words as between themselves but to their factual relation.'" *Sears Mortg. Corp.*, 634 A.2d at 79. In other words, what matters is the practical reality created by the parties' conduct, not a conclusory statement in a self-serving contract. *See, e.g., Lopez*, 2025 WL 260326, at *9 n.4 ("although

Sunlight points to the Program Agreement between Sunlight and NJ Sun Tech, which specifically disclaims an agency relationship between Sunlight and NJ Sun Tech, such clauses are not dispositive, especially at the motion to dismiss stage"; collecting cases).

Fourth, the district court erred in concluding that Migliore's "only specific fact" in support of agency arose from the FPA. R.14. In addition to other aspects of the FPA and the allegations in the SAC already discussed, Migliore alleged in the SAC that "[d]iscovery will show that at all times relevant, Vision Solar, Sunlight, and Cross River Bank retained the right to train and discipline the sales agent for failing to comply with program conditions," and that they "retained the right to review the contracts, forms, and software used by the sales agent." R.87 (SAC ¶¶ 41–42). The right to terminate for failure to comply with specified requirements is a tell-tale feature of control. *See, e.g.*, *Lopez*, 2025 WL 260326, at *9 (finding agency relationship in part because of allegation that "Sunlight retained the right, 'in its sole discretion,' to force Sun Tech to 'terminate' a sales organization's ability to market systems financed by loans through Sunlight"); *Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493, 2023 WL 8890229, at *5 (D.N.J. Dec. 26, 2023) (finding

agency relationship between franchisor and franchisee in part because "[Franchisors] had the right to terminate the franchise agreement with [Franchisee] if [Franchisee] failed to comply with the requirements promulgated by [Franchisors]."). But the district court gave no weight to these and Migliore's several other well-pleaded allegations in its plausibility analysis; this was error.

This Court has endorsed the sensible approach of reserving matters of agency for discovery, as the evidence necessary to prove an agency relationship is often maintained by the defendants or other parties. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003) (reversing dismissal, stating "we have held that discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack"); *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 865 (3d Cir. 1977) ("Because the existence of an agency relationship hinges largely on the particular facts of each case, discovery was essential to the preparation of an agency theory argument in this case."). Sister courts of appeal have adopted the same approach. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 588 (7th Cir. 2021) ("Bilek need not prove his claims at the pleading stage, and we need not

resolve the bounds of Bilek's agency claims here. We decide only that Bilek alleges a plausible claim for relief."); *Gunderson v. ADM Inv. Servs., Inc.*, 230 F.3d 1363 (8th Cir. 2000) (plaintiffs alleging "more than the bare legal conclusion of agency" need not plead an agency relationship "with complete insight before discovery is complete" to satisfy Fed. R. Civ. P. 9(b)).

It develops that because Sunlight is a serial fraudster, the facts surrounding its agency and right to control the solar sales staff have to some extent come to light in other litigation. Well beyond averring what is merely plausible or conclusory, Migliore has pled considerable detail about the fraudulent solar sales operation. She has laid out details of Sunlight/Cross River's control of the sales staff by reference to specific provisions in the FPA and elsewhere. She alleges that Sunlight and Cross River's sales agent, while acting for the benefit of these companies, misrepresented the very nature of the product as "free" solar panels yet forged Migliore's name on contracts including a $99,000 loan agreement that would mature when Migliore turns 90. R.82–83 (SAC ¶¶ 3–5). The companies purposely failed to deliver a simple copy of the contracts to the consumer then and there, as the law requires. R.83 (SAC ¶ 6). They

perpetuated the scam by concealing the contracts and their costly terms from Migliore via a fake email address until after the panels were installed on her home. R.82–83, 92–93 (SAC ¶¶ 3–6, 63, 70, 72). These facts readily support liability for deceptive conduct under N.J.S.A. 56:8-2.

Additional facts are, of course, within the defendants' knowledge and control. This Court has recognized the stringency of Rule 9(b)'s requirements while also holding that "courts should be sensitive to situations in which sophisticated defrauders may successfully conceal the details of their fraud." *In re Rockefeller Center Properties, Inc. Securities Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (cleaned up). The facts as alleged in the SAC go far beyond "boilerplate and conclusory allegations," *id.,* and exceed the requirements of Fed. R. Civ. P. 9(b). The judgment below should be reversed and this case should proceed to discovery to develop further the serious allegations of fraud, concealment, and the misuse of consumer credit reports as set forth in the SAC.

**B.    Migliore has plausibly alleged that Sunlight and Cross River violated the CFA by failing to deliver a copy of the contract they contend was signed by Migliore.**

In dismissing Migliore's CFA claims, the district court held that Sunlight and Cross River's withholding of the forged contracts from Migliore until after the panels were installed on her home does not violate the CFA because Sunlight and Cross River did not "require or request" Migliore to sign those documents. R.11–12. This circular reasoning was error, as the district court's ruling reflects a cramped view of the CFA and its consumer protective provisions.

"The Consumer Fraud Act, N.J.S.A. 56:8–1 to –195, provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1114 (N.J. 2011). "The CFA is intended to 'be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud,' and therefore to be liberally construed in favor of the consumer[.]" *Id.* at 1115 (internal citation omitted). "[T]he CFA does not attempt to enumerate every prohibited practice, for to do so would 'severely retard its broad remedial power to root out fraud in its myriad, nefarious manifestations.'" *Id.* (brackets omitted). To this end, "the history of the

CFA has been one of constant expansion of consumer protection." *Id.* (brackets omitted).

In addition to prohibiting the deceptive and unconscionable commercial practices on display here, N.J.S.A. 56:8-2, the CFA provides:

> It shall be an unlawful practice for a person in connection with a sale of merchandise to require or request the consumer to sign any document as evidence or acknowledgment of the sales transaction, of the existence of the sales contract, or of the discharge by the person of any obligation to the consumer specified in or arising out of the transaction or contract, unless he shall at the same time provide the consumer with a full and accurate copy of the document so presented for signature[.]

N.J.S.A. 56:8-2.22.

Here, the district court held that Sunlight and Cross River "could not have requested nor required [Migliore] to sign the document by intentionally sending it to an incorrect email address where she could not access it, let alone sign it, in an effort to commit fraud and forgery." R.12. This reading of the CFA was error, as the contract documents themselves show that Sunlight and Cross River "required" the customer to sign, or there would have been no need for the contracts to be forged by their sales agent. Both the 25-Year Loan and the RSA contain multiple places for the borrower's signatures and initials. R.92 (SAC ¶¶ 62, 66). Migliore is

entitled to the fair inference that Sunlight "required" her to sign the solar contract that they now seek to hold her to; why else would the salesman have forged Migliore's name?

The district court's interpretation of "require or request" would unreasonably exclude contracts with *forged signatures* from coverage, which could not have been intended. In New Jersey, "statutes should be interpreted in a manner that avoids unreasonable or absurd results." *In re Johnny Popper, Inc.*, 997 A.2d 257, 262 (N.J. Super. App. Div. 2010). "[W]here a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." *Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 498 (N.J. 2001). Stated differently, "when a literal interpretation of individual statutory terms or provisions would lead to results inconsistent with the overall purpose of the statute, that interpretation should be rejected." *Id.* (rejecting statutory interpretation that would require filing affidavits of merit in malpractice cases involving minor injuries, even though the statutory language applied broadly to "any action" involving professional malpractice).

"The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose,

namely, to root out consumer fraud." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997). The district court's anomalous interpretation of the CFA—that a contract created by a merchant to obligate a consumer need not be provided to the consumer—is contrary to the text and the broad remedial sweep of the CFA.

The legislative history also undermines the district court's interpretation of the CFA. *See Real v. Radir Wheels, Inc.*, 969 A.2d 1069, 1077 (N.J. 2009) ("We have explained that we may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language."). The stated intent of the legislature in enacting N.J.S.A. 56:8-2.22 was "to encourage good business practices and fair commercial dealing by ensuring that both parties to a sales transaction are alert to their respective rights and are able to maintain adequate records as a basis for enforcing those rights." Assembly Commerce and Industry Committee Statement, No. 234, 1982. This intent is fulfilled by holding merchants accountable by, at minimum, requiring the merchant to provide a copy of the very contract the merchant will seek to hold the consumer to. This

common-sense approach is consistent with the overall statutory scheme of the CFA.

The district court did not engage *at all* with any of the above principles of statutory interpretation, leading to this incongruous result. If left intact, the decision below would afford heightened protection to unscrupulous vendors who lie to customers to get business, withhold the true cost of goods and credit, and memorialize all this in a fake consumer contract that the merchant and its finance partner will seek to enforce. The district court's failure to square its analysis with the plain language of N.J.S.A. 56:8-2.22 and settled principles of statutory construction was error.

The district court also erred when it failed to recognize Migliore's other argument that Sunlight and Cross River's failure to deliver the forged contract was an unconscionable commercial practice under N.J.S.A. 56:8-2. Unconscionability is "an amorphous concept obviously designed to establish a broad business ethic." *Herner v. HouseMaster of Am., Inc.*, 793 A.2d 55, 66 (N.J. Super. App. Div. 2002). "The standard of conduct that the term 'unconscionable' implies is lack of 'good faith, honesty in fact and observance of fair dealing.'" *Id.* As the Supreme Court

of New Jersey has recognized, "[g]iven that the fertility of human invention in devising new schemes of fraud is so great . . . the CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud in its myriad, nefarious manifestations." *Lemelledo*, 696 A.2d at 551 (cleaned up).

Given the CFA's purpose of rooting out all manner of fraud, withholding from the consumer a copy of a fake and forged electronic contract would fall squarely within the CFA's broad remedial sweep as a deceptive or unconscionable commercial practice under both N.J.S.A. 56:8-2.22 and N.J.S.A. 56:8-2. But, without explanation, the district court did not address this alternative argument at all. This was error.

III. **The district court erred in dismissing Migliore's FCRA claims against Sunlight and Cross River.**

In 1970, Congress enacted the FCRA in part "to preserve the consumer's privacy in the information maintained by consumer reporting agencies." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009). To ensure the privacy of this sensitive consumer information, Congress limited the availability of consumer credit

reports—making them available only for certain specified purposes, stating that a "person shall not use or obtain a consumer report for any purposes unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section[.]" 15 U.S.C. § 1681b(f); *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). The FCRA also makes it a felony—punishable by two years' imprisonment—for any person who "knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q.

Thus, "to prevail on a claim under the FCRA, a plaintiff must prove both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, and that the violation was either willful or negligent." *Droney v. Vivint Solar*, No. 18-849, 2020 WL 3425301, at *5 (D.N.J. June 23, 2020). Under no circumstances may a third party "troll for reports" or "request a report on a whim" without a permissible purpose. *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005).

A lender fails to comply with 15 U.S.C. § 1681b(f) if it "knew or should have known that there was a possibility that the loan applications

were not, in fact, submitted by" the plaintiff. *Brown v. Vivint Solar, Inc.*, No. 8:18-CV-2838-T-24 JSS, 2020 WL 1332010, at *6 (M.D. Fla. Mar. 23, 2020). In *Brown*, the plaintiffs alleged violations of 15 U.S.C. § 1681b(f) by both the solar lender (Mosaic) and solar sales company (Vivint). *Id.* at *1 ("Plaintiffs contend that Vivint's salesmen came to their houses and completed Mosaic's online credit application in Plaintiffs' names without Plaintiffs' knowledge or consent."). There was evidence that Mosaic knew there "were problems with unauthorized credit checks caused by Vivint's salespeople[.]" *Id.* at *6. The court accordingly declined to enter summary judgment for Mosaic, finding that it "is for the jury to decide whether such evidence undercuts Mosaic's contention that it had a reasonable belief that it had a permissible purpose for checking Plaintiffs' credit." *Id.*

In the proceedings below, Sunlight and Cross River did not contend that they had a permissible purpose to obtain or use Migliore's consumer report. Instead, they argued that they are not liable for willfully or negligently violating the FCRA because Migliore's consumer report was procured through their sales agent—who they describe as an "identity thief." The district court agreed with Sunlight and Cross River, relying on a thread of inapposite "identity thief" cases involving unknown, third-

47

party identity thieves and businesses who, without knowledge of possible wrongdoing, obtain a consumer report for an ostensibly permissible purpose. R.17. This was error, as the sales agent here was not some unknown imposter, but was acting as instructed on behalf of Sunlight and Cross River in obtaining Migliore's consumer report.[7] R.96 (SAC ¶ 91).

It is well established that a principal is charged with the knowledge of its agent on matters related to the agency. *In re Color Tile Inc.*, 475 F.3d 508, 513 (3d Cir. 2007) (collecting cases); *NCP Litig. Tr. v. KPMG LLP*, 901 A.2d 871, 879 (N.J. 2006) ("a principal is deemed to know facts that are known to its agent"). Stated otherwise, "If any . . . agent acting within the general scope of his powers acquires knowledge of a particular

---

[7] The common fact pattern in an "identity thief" scenario is very different. An imposter walks into a retail store to open a credit account under another's name and credit presenting fake ID. Relying, perhaps reasonably, upon the written application for credit, the retailer (or its affiliated lender) will obtain a credit report upon the consumer whose name is presented by the identity thief. Although that consumer did not truly apply for credit nor authorize the release, the courts often will not impose liability upon the merchant who obtained the report in good faith and who reasonably believed the transaction was initiated by the consumer. *See e.g., Heim v. Comcast Cable Communications, LLC*, 2020 WL 9211285 *2-3 (N.D.Ill. June 1, 2020); *Glanton v. DirecTV, LLC*, 172 F. Supp. 3d 890, 895–96 (D.S.C. 2016) (relied upon by court below).

fact while committing a fraud upon a third person in a matter pertaining to the business of the corporation . . . the corporation will be imputable with such knowledge, as well as with knowledge of the fraud." *NCP Litig. Tr.*, 901 A.2d at 882. This longstanding agency rule serves salutary social purposes, as "[p]rincipals thereby are prevented from obtaining benefits through their agents while avoiding the consequences of agent misdeeds." *Id.* at 879 (cleaned up).

Here, as discussed *supra* in § II.A, Sunlight and Cross River are responsible for the sales agent's fraudulent conduct—including his acquisition of Migliore's consumer report—under well-established common law agency principles. The sales agent is not some unknown imposter; rather, the sales agent who obtained Migliore's consumer report was acting at the direction of Sunlight and Cross River, using electronic tools that enabled the acquisition of her consumer report without her consent. R.96, 105 (SAC ¶¶ 91, 137(a)). Indeed, pursuant to ¶ 9.3(a) of the FPA, Sunlight and Vision Solar collaborated "to integrate their respective processes and technology platforms to facilitate Loan Applications," enabling the sales agent to unlawfully obtain Plaintiff's consumer report for Sunlight and Cross River Bank's impermissible use.

R.123; *see also* R.112 (FPA ¶ 3.2, stating: "Sunlight will take Loan Applications through its online Platform").

Migliore further alleges in the SAC that Sunlight and Cross River willfully and negligently obtained and/or used Migliore's consumer report without a permissible purpose by, *inter alia*:

- "Continuing to give sales agents access to electronic tools that allow them to obtain and/or use a consumer's credit report without the consent of the consumer;"

- "Failing to adopt policies, procedures, and practices that would prevent sales agents from obtaining or using a consumer's credit report without the consent of the consumer;"

- "Failing to supervise sales agents to ensure that they would not obtain or use a consumer's credit report without the consent of the consumer;"

- "Failing to train sales agents to ensure that they would not obtain or use a consumer's credit report without the consent of the consumer;"

- "Disregarding complaints of fraudulent or deceptive conduct and/or impermissible credit pulls by sales agents;" and,

- "Employing quotas and/or sales goals/metrics that incentivize sales agents to obtain or use credit reports without the consent of the consumer."

R.105–06 (SAC ¶ 137). In *Brown*, the court considered such evidence in determining that summary judgment must be denied as to the solar lender, as the record supported the claim that the lender knew sales agents for another company were pulling credit without a permissible purpose. *Brown*, 2020 WL 1332010, at *6. This evidence included "that many people had been complaining about unauthorized credit inquiries run by Mosaic after Vivint's salesmen had come to their houses," testimony from an employee who said "he commonly received calls from people complaining that [Vivint] checked their credit without their consent," and that in the two years leading up to the plaintiffs' credit inquiries, "Equifax had 580 consumer disputes regarding credit inquiries from Vivint and Mosaic in Florida." *Brown*, 2020 WL 1332010, at *3. Instantly, this type of evidence must be developed in the regular course of discovery. But even at this preliminary stage of the litigation, the averments of wrongdoing and of agency in the SAC are unusually detailed.

Moreover, if the salesman was Sunlight and Cross River's agent (as the well-pleaded facts amply demonstrate), his actions—of deliberately forging Migliore's signature on a credit authorization and creating a fake email address only he controlled to do so—are knowing and intentional actions attributed to the principal. *In re Color Tile Inc.*, 475 F.3d at 513; *NCP Litig. Tr.*, 901 A.2d at 879. Migliore amply states a claim for negligence and also a willful violation of the FCRA. 15 U.S.C. §§ 1681n, 1681*o*.

The district court did not consider any of Migliore's allegations of agency, nor any of the above allegations demonstrating the ways in which Sunlight and Cross River willfully and negligently obtained Migliore's consumer report. Instead, the district court independently concluded that the sales agent was an imposter, which Migliore did not allege in the SAC, and which invokes an entirely different legal analysis. R.17. This was error.

After making this determination that the sales agent was an imposter, the district court stated "[t]here is no violation of [the FCRA] when a creditor obtains a credit report due to an imposter's application for credit even though the identity theft victim did not make the

application," citing two district court cases: *Glanton* and *Mathews*. R.17. Crucially, neither of these cases involve the situation where the identity thief was an agent of the corporate defendant—acquiring the plaintiff's consumer report on behalf of the corporate defendant. Nor do these cases involve situations such as in *Brown* where the lender was on notice that the sales company's agents were impermissibly pulling credit on the lender's behalf. *Brown*, 2020 WL 1332010, at *6. As such, both cases are readily inapposite.

Moreover, the FCRA violation here is not merely the sales agent's impermissible acquisition of Migliore's consumer report on behalf of Sunlight and Cross River. Independent of their sales agent, Sunlight and Cross River willfully and negligently *used* Migliore's consumer report without a permissible purpose. R.97, 105 (SAC ¶¶ 94, 136). Impermissible use is an independent violation of the statute. 15 U.S.C. § 1681b(f). As alleged, Sunlight and Cross River "used [Migliore's] consumer report to determine her eligibility for a loan product, and they did so without [Migliore's] knowledge or consent, without [Migliore] having initiated or intending to initiate any credit transaction, and without a permissible purpose." SAC ¶ 136. A screenshot of Migliore's

consumer report corroborates Sunlight and Cross River's independent use of her consumer report, as it identifies both under the "Hard Inquiries" section of her report:



R.96 (SAC ¶ 90). Although Migliore made this point below, the district court did not analyze whether Sunlight and Cross River's independent *use* of Migliore's consumer report, especially in light of their knowledge of Vision's deceptive sales practices, violated the FCRA. Instead, the district court framed the issue as an imposter "obtaining" Migliore's consumer report, without any reference to Sunlight and Cross River's use

of her report and their preexisting knowledge of the litany of consumer complaints of similar fraudulent conduct by Vision Solar sales agents.

Accordingly, the district court erred in holding that Migliore failed to state a claim under the FCRA that Sunlight and Cross River willfully and negligently obtained and used Migliore's consumer report without a permissible purpose, in violation of 15 U.S.C. § 1681b(f).

## CONCLUSION

The CFA and FCRA exist to protect consumers and senior citizens like Migliore from precisely the type of consumer fraud and abuse that occurred in this case. The district court disregarded Migliore's allegations of agency and failed to afford proper consideration to the text and spirit of these statutes. The district court's order dismissing Migliore's SAC must be reversed so that Migliore is afforded the opportunity to prove her allegations in the SAC.


Dated: <u>February 19, 2025</u>          Respectfully submitted,

                                         <u>*s/Jody T. López-Jacobs*</u>
                                         Cary L. Flitter
                                         Andrew M. Milz
                                         Jody T. López-Jacobs
                                         FLITTER MILZ P.C.
                                         1814 East Route 70, Suite 350

Cherry Hill, NJ  08003
(856) 396-0600
cflitter@consumerslaw.com
amilz@consumerslaw.com
jlopez-jacobs@consumerslaw.com

*Counsel for Appellant Eva
Migliore, by her next friend
Joseph Migliore*

# COMBINED CERTIFICATIONS

**1. Bar Membership:** I certify that I am a member of this Court's bar.

**2. Word Count, Typeface, and Type Style:** I certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief (as indicated by my word processing program, Microsoft Word) contains 10,728 words, excluding those portions excluded under Rule 32(a)(7)(B)(iii). I also certify that this brief complies with the typeface requirements of Rule 32(a)(5) and type style requirements of Rule 32(a)(6) because this brief has been prepared in the proportionally spaced typeface of 14-point Century.

**3. Service:** I certify that on this date I am causing this brief and appendix thereto to be filed electronically via this Court's CM/ECF system. All participants in this appeal are registered CM/ECF users and will be served by the CM/ECF system.

**4. Paper Copies:** I certify that the text of the electronic brief and appendix thereto filed via ECF is identical to the text of the paper copies that will be delivered to the Court.

**5. Virus Check:** I certify that I have performed a virus check using

Microsoft Defender as of February 19, 2025.


Date: <u>February 19, 2025</u>     <u>*s/ Jody T. López-Jacobs*</u>
                                    JODY T. LÓPEZ JACOBS